**UNIVERSAL CITY STUDIOS, INC.,**
**Plaintiff-Appellant,**

v.

**NINTENDO CO., LTD., Nintendo of America, Inc.,**
**Defendants-Appellees.**

**No. 1208, Docket 84–7095.**

United States Court of Appeals,
Second Circuit.

Argued May 23, 1984.

Decided Oct. 4, 1984.

Douglas C. Fairhurst, New York City (Mary D. Faucher, Sandra Edelman, Townley & Updike, New York City, of counsel), for plaintiff-appellant.

John J. Kirby, Jr., New York City (Thomas G. Gallatin, Jr., Shelley B. O'Neill, Catherine E. Palmer, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, and James L. Magee, Sax & Maciver, Seattle, Wash., of counsel), for defendants-appellees.

Before FRIENDLY, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Sweet, J., granting the motion for summary judgment by the defendants, Nintendo Co., Ltd. and Nintendo of America, Inc. (Nintendo), in the action brought by plaintiff Universal City Studios, Inc. (Universal) under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), the New York anti-dilution statute, N.Y.Gen.Bus.Law § 368–d (McKinney 1984), and common law unfair competition, trademark and trade name principles. *Universal City Studios, Inc. v. Nintendo Co.*, 578 F.Supp. 911 (S.D.N.Y.1983). We affirm.

### BACKGROUND

Nintendo Co., and its wholly owned subsidiary Nintendo of America, has engaged in the design, manufacture, importation and sale of the extraordinarily successful video game known as "Donkey Kong." Nintendo has realized over $180 million

from the sale of approximately 60,000 video arcade machines in the United States and Canada. Donkey Kong requires the player to maneuver a computerized man named Mario up a set of girders, ladders and elevators to save a blond pigtailed woman from the clutches of a malevolent, yet humorous gorilla, while simultaneously avoiding a series of objects such as barrels and fireballs hurled at him by the impish ape.

Universal, a giant in the entertainment industry, maintains that it owns the trademark in the name, character and story of "King Kong." The King Kong character and story, of course, need no introduction. Universal traces its ownership of the trademark from RKO General's (RKO) efforts to exploit the goodwill created by its 1933 film classic of the same name. It asserts that RKO's commercial use of the name and character of King Kong created the trademark; that the rights to the trademark were passed from RKO to Richard Cooper, son and heir of King Kong creator Merian Cooper, pursuant to a judgment resulting from a claim brought by Richard Cooper against RKO alleging that RKO had exceeded the license originally granted by Merian Cooper to make the original King Kong motion picture; and that Richard Cooper subsequently transferred to Universal for consideration the rights he obtained from RKO.[1]

Universal filed its complaint against Nintendo in 1982, approximately nine months after Nintendo began marketing Donkey Kong. Universal alleged that the Donkey Kong name, character and story constituted false designation of origin in violation of 15 U.S.C. § 1125(a) because Nintendo's "actions falsely suggest to the public that [its] product originates with or is authorized, sponsored or approved by the owner of the King Kong name, character and story." Universal also asserted claims based upon the New York anti-dilution statute, N.Y. Gen.Bus.Law § 368–d, and common law unfair competition, trademark and trade name principles.[2] Neither side requested a jury trial.

After extensive discovery, Nintendo moved for summary judgment. The motion was granted by the district court. Specifically, the court held that (a) Universal failed to derive trademark rights from RKO because the transfer from RKO to Cooper was an invalid assignment in gross; (b) any trademark that Universal purported to own could not be the basis of a successful action under the Lanham Act because it lacked "secondary meaning" as a matter of law; (c) even if Universal's trademark had secondary meaning, there was no question of fact as to whether consumers were likely to confuse Donkey Kong and King Kong; (d) Universal did not state a claim under the New York anti-dilution statute because it lacked a distinctive trademark and there were no triable issues as to whether Donkey Kong blurred the King Kong mark; and (e) the common law trade-

1. Richard Cooper's complaint against RKO was a cross-claim brought in the course of an action filed in 1975 in the United States District Court for the Central District of California by Universal against RKO, Cooper and the Dino DeLaurentiis Corp. (DDLC). Universal sought, *inter alia,* a declaration that it could proceed with a remake of the King Kong movie because the story was in the public domain. RKO also brought a counterclaim against Universal. The district court held in favor of Universal in the claim and counterclaim and in favor of Cooper in the cross-claim.

RKO and Universal entered into a settlement agreement while the decision was being appealed. The Universal-RKO and Cooper-RKO judgments were subsequently vacated by the United States Court of Appeals for the Ninth Circuit in light of the settlement and the cases were re-

manded. The district court reinstated the judgment in favor of Cooper in 1981 after it concluded that the judgment was not rendered moot by the Universal-RKO settlement. Both Universal's claim and the counterclaim brought by RKO were dismissed by the district court.

2. Nintendo asserted a counterclaim against Universal alleging that Universal contributed to the infringement of its copyright in the original audiovisual material used in Donkey Kong by licensing Tiger Electronics, Inc. to produce an infringing King Kong home video game and further alleging intentional interference with contractual relations, intentional misappropriation of Nintendo's rights in Donkey Kong and intentional interference with Nintendo's present and future business relations. These claims are still pending.

mark, trade name and unfair competition claims should be dismissed.[3] The district court subsequently certified its decision as final under Fed.R.Civ.P. 54(b) even though Nintendo's counterclaim remained unadjudicated.[4] This appeal followed.

DISCUSSION

We turn first to what Universal labels the "main" issue, whether the district court's decision that Universal failed to raise a question of fact as to the likelihood of consumer confusion concerning the origin of Donkey Kong was erroneous. Because we affirm the holding of the district court on this issue, we need not and do not decide if the district court was correct in finding that the King Kong mark was not validly developed and conveyed to Universal and that the King Kong mark has not acquired secondary meaning. Rather, we assume only *arguendo* that the King Kong trademark was validly developed and conveyed to Universal and that the King Kong mark has secondary meaning. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir.1980) ("even if we assume for purposes of this appeal that [counterclaim plaintiff] could demonstrate secondary meaning at trial, since likelihood of consumer confusion could not be established [counterclaim defendant] was entitled to summary judgment").

■ To be entitled to summary judgment, Nintendo must demonstrate "the absence of any material factual issue genuinely in dispute," *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citation omitted), and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The record must be construed in the light most favorable to Universal and all reasonable inferences must be drawn to its advantage. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 875 (2d Cir.1975). We hold that Universal failed to raise a question of fact on the issue of the likelihood of consumer confusion and thus Nintendo was entitled to summary judgment on the Lanham Act claim.

■ "It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam) (citation omitted), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). *See also Lever Brothers Co. v. American Bakeries Co.*, 693 F.2d 251, 253 (2d Cir.1982); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) ("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."). "The solution of this problem ... depends upon a consideration of the facts and circumstances in each case." *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1003 (2d Cir. 1983). The factors enumerated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287

---

**3.** The district court rejected Nintendo's claim that, as a result of arguments made in the course of the Universal-RKO litigation, Universal is judicially estopped from asserting trademark rights in King Kong. The district court also refused to accept Nintendo's argument that Universal was, by virtue of various judgments and stipulations in the Universal-RKO-Cooper-DDLC litigation, collaterally estopped from making its claims herein. We need not address the questions of judicial and collateral estoppel, in light of our holding that Universal failed to raise a question of fact on the issue of whether

consumers are likely to confuse Donkey Kong and King Kong.

**4.** We asked the parties to submit briefs addressing the question whether the district court abused its discretion by certifying the decision granting summary judgment where the issues presented by the counterclaim remained unresolved. We are now satisfied that no abuse of discretion occurred. *See Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), are utilized and balanced to determine the likelihood of confusion:

> Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account.

*Id.* at 495. Questions regarding the likelihood of confusion are normally factual in nature. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). Nonetheless, "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source," *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir.1983), and summary judgment is appropriate if the court is satisfied that the products or marks are so dissimilar that no question of fact is presented. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir.1980) (summary judgment granted to counterclaim defendant on issue of likelihood of consumer confusion); *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir.) (summary judgment to defendant), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 954–55 (S.D.N.Y.1980).

■ In *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231 (2d Cir. 1983), Warner, owner of the trademark and copyright in the fictional character Superman, brought an action against ABC for its production of a television series entitled "The Greatest American Hero." Warner claimed, as does Universal in this case, that the character infringed its trademark. We held that it was proper to compare the "extent to which the allegedly infringing character captures the 'total concept and feel'" of the protected character in order to determine whether there exists a fair jury issue on the likelihood of confusion. *Id.* at 241, 246. We concluded after such an examination that summary judgment was proper in the facts and circumstances of that case. *Id.* at 246–47. The district court conducted a visual inspection of both the Donkey Kong game and the King Kong movies and stated that the differences between them were "great." 578 F.Supp. at 928. It found the Donkey Kong game "comical" and the Donkey Kong gorilla character "farcical, childlike and nonsexual." *Id.* In contrast, the court described the King Kong character and story as "a ferocious gorilla in quest of a beautiful woman." *Id.* The court summarized that "Donkey Kong[ ] ... create[s] a totally different concept and feel from the drama of King Kong" and that "[a]t best, Donkey Kong is a parody of King Kong." *Id.* Indeed, the fact that Donkey Kong so obviously parodies the King Kong theme strongly contributes to dispelling confusion on the part of consumers. *Cf. Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F.Supp. 785, 790 (E.D.N.Y.1983) ("broad satirical adaptation draws a heavy line between itself and the object of satire"). The district court then evaluated and rejected Universal's claim that a survey performed on its behalf raised a question of fact concerning the likelihood of actual confusion. The court concluded by applying its previous determinations as to the relative strength of the marks,[5] the similarity of the underlying characters, the survey evidence of actual confusion and other factors to the *Polaroid* criteria and concluded that "no reason-

---

5. The court found that the King Kong mark lacked distinction and failed to identify the goods it represented as emanating from a particular source based upon its prior conclusion that King Kong lacked secondary meaning. 578 F.Supp. at 928.

able jury could find likelihood of confusion." *Id.* at 929. *Compare American International Group, Inc. v. London American International Corp.,* 664 F.2d 348 (2d Cir.1981) (holding summary judgment for defendant inappropriate where plaintiff's trademark used worldwide for fifty years, defendant's allegedly infringing name incorporated all of plaintiff's trademark, plaintiff and defendant used mark and allegedly infringing name in same market and press discussions of defendant's business misidentified defendant by plaintiff's trademark).[6]

We agree with the district court that the two characters and stories are so different that no question of fact was presented on the likelihood of consumer confusion.[7] *Cf. Tetley, Inc. v. Topps Chewing Gum, Inc.,* 556 F.Supp. at 789–90 (parody does not constitute infringement or unfair competition where products are so dissimilar that there is no likelihood of confusion as to source, sponsorship or endorsement). The two properties have nothing in common but a gorilla, a captive woman, a male rescuer and a building scenario. Universal has not introduced any evidence indicating actual consumer confusion. *See* discussion *infra* on Universal's survey. Where, as here, the two properties are so different, Universal's claim cannot stand without some indication of actual confusion or a "survey of consumer attitudes under actual market conditions." *Mattel, Inc. v. Azrak-Hamway International, Inc.,* 724 F.2d 357, 361 (2d Cir.1983) (per curiam).

**6.** The district court also determined, as a separate matter, that Universal's agreements with several of Nintendo's licensees to forebear future litigation in exchange for royalty payments "reinforce[d] the court's holding ... that there is no likelihood of confusion as a matter of law." 578 F.Supp. at 930. Because we hold on other grounds that Universal failed to raise a question of fact on the issue of likelihood of confusion, we need not discuss whether the district court interpreted and applied this factor correctly.

**7.** Capitalizing on the popularity of the Donkey Kong characters, Nintendo has marketed numerous related items in addition to the videogame. *See* Defs. Exhs. 13–38. Although these

■ Universal argues that the district court's analysis ignored its "primary" contention, "whether Donkey Kong is confusingly similar to the *name* King Kong." It maintains that it has presented evidence which raises questions of fact on the likelihood of confusion regarding the two names. After reviewing this evidence, we are satisfied that no question of fact exists and thus the decision below should be affirmed.

Universal points to the similarity of the two names, claiming that the use of the word "Kong" raises a question of fact on the likelihood of confusion. We disagree. In order to determine if confusion is likely, each trademark must be compared in its entirety; juxtaposing fragments of each mark does not demonstrate whether the marks as a whole are confusingly similar. *See San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 685 (C.C.P.A.1977) ("Each syllable of each mark generates an 'impact,' but the only impact to be considered is that of the whole."); *Commerce Foods, Inc. v. PLC Commerce Corp.,* 504 F.Supp. 190, 196 (S.D.N.Y.1980). The "Kong" and "King Kong" names are widely used by the general public and are associated with apes and other objects of enormous proportions. *See* Affidavits of Jeffrey Rovin and Caroline Riggio, Exhs. DX–2 and DX–3 to J.App. Nintendo's use of the prefix "Donkey" has no similarity in meaning or sound with the word "King." When taken as a whole, we find as a matter of law that

items are not themselves at issue in this action, their presence in the market arguably might create confusion among consumers that would not exist if Nintendo marketed only the videogame. Universal has not made this argument, however, and nothing in the record supports such a conclusion. Moreover, since the videogame is by far the dominant source of goodwill for these characters, consumer impressions of these other items are likely to be generated by the videogame, diminishing the possibility that the items will create more confusion among consumers than the videogame itself. Finally, these items have the same "total concept and feel" as the videogame and just as obviously are unlikely to be confused with King Kong.

"Donkey Kong" does not evoke or suggest the name of King Kong.

■ Universal places particular emphasis on a telephone survey of 150 arcade, bowling alley and pizza parlor owners and managers who had purchased or leased one or more Donkey Kong games. While a survey may indicate the existence of a question of fact on the likelihood of confusion, *see Mattel, Inc. v. Azrak-Hamway International, Inc.*, 724 F.2d at 361, "[t]he survey must ... have been fairly prepared and its results directed to the relevant issues." *National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F.Supp. 651, 657 (W.D.Wash. 1982). *See Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1323–26 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263–64 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). We find that Universal's survey is so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion.

The individuals surveyed were asked "To the best of your knowledge, was the Donkey Kong game made with the approval or under the authority of the people who produce the King Kong movies?" Eighteen percent of those responding answered in the affirmative. Universal argues that this result demonstrates the existence of *actual* confusion. *See, e.g., Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F.Supp. 707, 716 (S.D.N.Y. 1973), *aff'd*, 523 F.2d 1331 (2d Cir.1975). However, the question is unfair because Universal does not claim any ownership rights in the 1933 or 1976 King Kong films. Rather, Universal's trademark is supposedly derived from RKO's efforts to exploit the success of the 1933 movie. The survey question apparently was a transparent attempt to raise an image which Universal does not own in the minds of the respondents, that of King Kong climbing the Empire State Building/World Trade Center with Fay Wray/Jessica Lange in his paw. As such, the inquiry is unfair because no attempt was made to connect Donkey Kong with Universal's alleged trademark in the *name* King Kong.

There are two additional reasons why Universal cannot rely on the survey. First, the survey utilized an improper universe in that it was conducted among individuals who had already purchased or leased Donkey Kong machines rather than those who were contemplating a purchase or lease. *See American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 661 n. 4 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980); *Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108, 1116 (S.D.N.Y.1981) ("To be probative and meaningful ... surveys ... must rely upon responses by potential consumers of the products in question."). Second, the above-mentioned inquiry was an obvious leading question in that it suggested its own answer. The participants were presented with the Donkey Kong-King Kong connection rather than permitted to make their own associations. When the participants were asked "As far as you know, who makes Donkey Kong?" not one suggested Universal or the makers of the King Kong movies. *See American Footwear Corp. v. General Footwear Co.*, 609 F.2d at 661 n. 4, 663 (1980); *General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F.Supp. 716, 736 (W.D.Mich.1964). A survey question which begs its answer cannot be a true indicator of the likelihood of consumer confusion.[8]

---

**8.** We do not doubt that there are some consumers who believe that the producers of Donkey Kong and of King Kong are the same. However, the fact that there may be a few confused consumers does not create a sufficiently disputed issue of fact regarding the likelihood of confusion so as to make summary judgment im-

proper. In *Warner Bros.*, while acknowledging that "there may be some viewers among the television audience who think that the *Hero* series was produced or authorized by those responsible for the Superman movies, television series, or comics," we held that "the availability of survey evidence indicating that some viewers

■ Universal posits that the opinions of various video game commentators linking Donkey Kong and King Kong are indicative of consumer confusion.[9] We disagree. The statements cited by Universal recognize that the Donkey Kong theme loosely evokes the King Kong films. However, none of the statements remotely suggests that the authors were under the impression that Donkey Kong was connected with the company holding the King Kong trademark.

■ Universal also claims that a letter written in August 1982 by Nintendo of America's Customer Service Manager to the Editor of *How to Win at Donkey Kong*, which states that there is no connection between Nintendo and the producers of King Kong, is an implicit admission that the commentators, and thus consumers, "connect" Donkey Kong with King Kong. This is disingenuous. The letter was written after Universal commenced this action and is an obvious attempt to avoid further legal difficulties. The letter in no way detracts from the plain language of the video commentators which reveals no confusion on their part as to the source of Donkey Kong. Equally irrelevant is Universal's reference to a letter written by Nintendo of America's President to the United States Patent and Trademark Office stating that counterfeit Donkey Kong games were being sold "us[ing] either an identical or a confusingly similar name, including ... Crazy Kong, and such variations thereof as King Kong and Donkey Kong." This statement was made as part of an effort by Nintendo to show that "King Kong" was confusingly similar to "Donkey Kong" when applied to a duplicate arcade game and adds nothing to the question whether or not Donkey Kong is confusingly similar to Universal's alleged trademark in the King Kong name, character and story.

■ Finally, Universal argues that statements by Donkey Kong's developer, designer and others indicating that the ideas for the game concept and name of Donkey Kong were derived in part from the King Kong film raises a presumption that the two trademarks are confusingly similar. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980). Universal concedes that the presumption is rebutted where no question of fact exists as to the likelihood of confusion. Br. for Plaintiff-Appellant at 35. *See Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d at 247. In light of our conclusion that no reasonable question of fact is presented concerning the likelihood of confusion, *supra*, Universal is not entitled to the benefit of the presumption of confusing similarity due to intentional copying.

associated the *Hero* series with Superman does not create a *reasonably* disputed factual issue of likelihood of confusion as to source when the works are as different as those in this case." 720 F.2d at 246 (emphasis in original). The same may be said of Donkey Kong and King Kong.

9. Examples cited by Universal are (1) the headline on page 40 of the October 1982 issue of *Videogaming Illustrated*, "[O]ur *Donkey Kong* presentation continues as we look at other gorillas who have had a fondness for women. Prominent among them is King Kong, who has much in common with the video villain.;" (2) the statement at page 136 in Craig Kubey's *The Winners' Book of Video Games* (1982), "Donkey Kong [is] a video version of the film classic *King Kong;"* (3) the statement at page 181 in Steve Bloom's *Video Invaders* (1982), "Whoever dreamt up Donkey Kong obviously had the 1933 classic version of King Kong in mind, but why the construction set? This latter-day Kong drags a blond (who in no way resembles the film's heroine, Ms. Wray) up a series of girders and forces a little dope named Mario, who happens to be a carpenter, to rescue her;" (4) the headline on page 26 of the May 1982 issue of *Electronic Games*, "King Kong Goes Coin-Op" (The article itself goes on to say that "[m]embers of the coin-op *cogniscenti* are already swarming all over this charmer that boasts a storyline right out of a '40's 'Popeye' cartoon and graphics to match."); (5) the statement in the column by John Holmstrom in the July 1982 issue of *Heavy Metal* that "Donkey Kong takes elements from two classics—Don Quixote and King Kong;" and (6) the statement in the January/February 1983 issue of *Film Comment*, "[Donkey Kong] begins with King Kong grabbing Fay Wray and climbing to the top of a structure of girders linked by ladders."

In sum, we find that Universal failed to raise a question of fact whether there was any likelihood that an appreciable number of prudent purchasers are likely to be misled or confused as to the source of Donkey Kong. Consequently, the district court properly granted summary judgment to Nintendo on Universal's Lanham Act claim.

We now turn to the district court's grant of summary judgment for Nintendo on Universal's claim for injunctive relief under the New York anti-dilution statute, N.Y.Gen.Bus.Law § 368–d. Universal need not show a likelihood of confusion as to source to establish an anti-dilution claim. *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d at 248. Rather, Universal "must possess a strong mark—one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution," *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). It must also demonstrate a "likelihood of dilution" of its mark. *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir.1983). Universal failed to present any evidence indicating that Donkey Kong will have an adverse effect on King Kong's reputation or deprive the mark of its distinctiveness. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d at 625–26. We find that the names and characters in dispute are so different that no reasonable question of fact was raised on the issue of blurring. *Cf. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d at 204–05 & n. 8 (dilution occurred where sexually explicit movie utilized distinctive uniform "almost identical" to that of plaintiffs). Summary judgment for Nintendo was therefore proper.

The district court also correctly dismissed the common law claims because, as discussed *supra*, Universal failed to raise a question of fact on the likelihood of confusion. *Mattel, Inc. v. Azrak-Hamway International, Inc.*, 724 F.2d at 360–61.

The judgment of the district court is affirmed.