The EAGLE'S EYE, INC.

v.

AMBLER FASHION SHOP, INC.

Civ. A. No. 84–5162.

United States District Court,
E.D. Pennsylvania.

April 19, 1985.

---

Edward F. Mannino, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for plaintiff.

Arnold Ira Kalman, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before me is defendant Ambler Fashion Shop, Inc.'s motion to dismiss, pur-

suant to F.R.C.P. 12(b)(6), the claims of The Eagle's Eye for trademark infringement, unfair competition, misappropriation and commercial disparagement. For the reasons discussed below defendant's motion will be granted as to plaintiff's misappropriation of right of publicity claim (Amended Complaint, Count VII) and will be denied as to all other claims.

## I. *Eagle's Eye and Beagle's Eye*

Plaintiff Eagle's Eye is a manufacturer, distributor and retailer of men's, women's, and children's clothing. Plaintiff's registered trademark, "the eagle's eye," is displayed on its garments, in its stores and in its advertising. The mark consists of the profile of an eagle's head beneath which lies the phrase "the eagle's eye." Plaintiff's mark was accepted for trademark registration on July 12, 1983 and has been in use since November 2, 1977.

In addition to its retail operations, plaintiff has conducted periodic warehouse sales over the past five (5) years. Plaintiff trumpets these sales through advertisements both mailed to existing customers and displayed in the *Philadelphia Inquirer*. These advertisements include the phrase "The Eagle Has Landed," a map highlighting plaintiff's Conshohocken, Pennsylvania warehouse location, and directions to reach the warehouse from various points in the Philadelphia area. Of particular interest in this litigation is plaintiff's warehouse sale that was advertised and conducted from September 13, 1984 through September 24, 1984.

Defendant Ambler Fashion Shop is a clothier which sells various brands of sportswear manufactured by others through its Ambler, Pennsylvania retail store. Plaintiff's complaint stems from a sale conducted by defendant between September 4, 1984 and September 11, 1984. Defendant heralded this sale by running advertisements in various newspapers, including the *Philadelphia Inquirer*. Defendant's advertisements contained the phrases "The Beagle Has Landed" and "Ambler Fashion Shop's Beagle's Eye Sale." Also included in the advertisement was a caricature of a beagle and a map with directions pinpointing defendant's locations.

Plaintiff, contending that defendant's advertisements infringed its "eagle's eye" trademark, requested that defendant cease and desist from using the name "Beagle's Eye" in its business activities. In response, defendant apparently agreed to stop using the "Beagle's Eye" in future advertisements, but refused to compensate plaintiff for harm allegedly suffered or to undertake corrective advertising. Plaintiff's displeasure with defendant's response is evidenced by the initiation of this litigation.

Plaintiff's amended complaint alleges eight causes of action:

(1) federal trademark infringement under 15 U.S.C. § 1114(1) and § 1125;

(2) federal unfair competition under 15 U.S.C. § 1114 and § 1125;

(3) unfair competition under the common law;

(4) trade name infringement under Pennsylvania Law;

(5) unfair competition under Pennsylvania law, 54 Pa.C.S.A. § 1123;

(6) misappropriation of property rights under Pennsylvania common law;

(7) misappropriation of right of publicity under Pennsylvania;

(8) commercial disparagement under Pennsylvania law.

## II. *Federal Claims for Trademark Infringement and Unfair Competition.*

The Lanham Act, 15 U.S.C. § 1114(1)(a), authorizes a civil action to remedy any unauthorized use of a federally registered mark that "is likely to cause confusion, or cause mistake, or to deceive." Unregistered words or symbols that act to identify source are protected under 15 U.S.C. § 1125(a), which proscribes any "false designation of origin or any false description or representation" in connection with the sale of goods or services. An element common to both Lanham Act or

common law trademark infringement and unfair competition is "likelihood of confusion." As recently stated by the Second Circuit Court of Appeals, "[i]t is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be mislead, or indeed simply confused, as to the source of the goods in question." *Universal City Studios Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir.1984). *See also Surgical Supply Service, Inc. v. Adler*, 321 F.2d 536, 539 (3d Cir.1963); 2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 23:1 at 42–43 (2d Ed.1984). Several factors must be evaluated to determine whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the products sold; (4) the marketing and retailing channels used; (5) the defendant's intent in adopting the mark; (6) the sophistication of the buyers; and (7) actual confusion. *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 116 (2d Cir.1984); *AMF, Inc. v. Steekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979).

In the case at bar, defendant rests its entitlement to Rule 12(b)(6) dismissal on its assertion that plaintiff has "not set forth any facts in the Amended Complaint which would permit a conclusion to be drawn that likelihood of confusion could possibly exist." (Defendant's Supplemental Memorandum at 7). Stated more succinctly, defendant argues that "a beagle simply cannot be confused for an eagle by anyone." (Defendant's Supplemental Memorandum at 3). Despite its appealing simplicity, this argument must be rejected for the reasons detailed below.

Initially, I note that in a Rule 12(b)(6) motion, the plaintiff is afforded the safeguards of having all of its allegations taken as true and all favorable inferences drawn. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Moreover, a motion to dismiss cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed. 80 (1957). Against this procedural background, and buttressing it, lies the rule that generally speaking likelihood of confusion is a question of fact. *Universal City Studios, Inc. v. Ninento Co., Ltd.*, 746 F.2d 112, 116 (2d Cir.1984); 2 McCarthy, *Trademarks and Unfair Competition*, § 23:22 at 107, § 32:37 at 745 (2d ed. 1984). It must be tested by the consumer's state of mind when faced with the individual marks, and not by the court's side-by-side comparison of the marks. 2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 23:17 at 95–96, § 23:26 at 122 (2d ed. 1984). Most importantly, the plaintiff is not required to prove the likelihood of confusion at the pleading stage.

In response to the foregoing legal standards, the defendant argues that courts retain important authority to monitor the outer limits of similarity within which a factfinder is permitted to make a factual determination whether there is a likelihood of confusion as to source. *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 116 (2d Cir.1984). Summary dismissal pursuant to Rule 12(b)(6) is proper, contends Ambler Fashion Shop, where on the face of the complaint there are insufficient facts alleged to permit a conclusion to be drawn that customers are likely to be confused.

While the foregoing assertions by the defendant may reflect valid propositions of law, it is evident that they have no application to the facts at bar. This is perhaps best illustrated by contrasting the instant case to one relied on by the defendant, *Toho Co., Ltd. v. Sears, Roebuck and Co.*, 645 F.2d 788 (9th Cir.1981). In *Toho*, the plaintiff sued Sears, Roebuck and Co. for allegedly improper use by Sears of a likeness of Toho's movie character, Godzilla. Sears sold garbage bags in boxes which designated the bags as a Sears product, but which also displayed the word "Bagzilla," depicted a "comic, helpful, personified rep-

tilian creature," and carried the legend "Monstrously Strong Bags." The *Toho* court found 12(b)(6) dismissal proper chiefly because the goods were unrelated as a matter of law (garbage bags as opposed to literary works and toys). The court also found the parties used different marketing channels. *Toho Co., Ltd. v. Sears, Roebuck and Co.*, 645 F.2d 788, 790–791 (9th Cir.1981).

■ Thus, *Toho* presented a situation markedly different from that at bar. Here, both parties are engaged in the sale of related goods (clothing) and both utilized newspaper advertisements to market their products. While small dogs and large birds are rather obviously distinguishable in the minds of consumers, the similarity in sound between "eagle's eye" and "beagle's eye," when coupled with the other similarities between the parties' products and advertisement campaigns outlined above, could cause a factfinder to conclude that a likelihood of confusion exists.

Thus, although plaintiff's claim is rather tenuous in my view, the question presented must be resolved by a jury. Dismissal pursuant to Rule 12(b)(6) is appropriate in only the most extreme trademark infringement and unfair competition cases, such as where the goods are unrelated as a matter of law. Such a case is not presented here.

### III. *State Claims for Trade Name Infringement and Unfair Competition*

■ Plaintiff, in Count IV of its amended complaint, alleges trade name infringement "in violation of the applicable [Pennsylvania] common law." The crucial element of federal statutory trademark infringement, likelihood of confusion, is also the test of common law trade name infringement. 2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 23:1 at 42 (2d ed. 1984). Thus, the preceding discussion on likelihood of confusion wholly pertains to plaintiff's state/common law infringement claim. Accordingly, defendant's mo-

tion to dismiss plaintiff's common law trade name infringement claim will be denied.

In Count V of its amended complaint, plaintiff asserts a claim for unfair competition under Pennsylvania law. Specifically, plaintiff alleges that defendant's conduct violated the Pennsylvania Trademark Law, 54 Pa.C.S.A. § 1123, in that "such conduct has caused the likelihood of confusion or misunderstanding as to sources, sponsorship, affiliation, connection or association of defendant's products and services with those of the Eagle Eye." I note that § 1123 of the Pennsylvania Trademark Law is patterned after § 11 of the Model State Trademark Bill, which is in turn based on the Federal Trademark Act (Lanham Act). Plaintiff's state statutory claim under Pa.C.S.A. § 1123 is therefore coextensive with its claims under the Lanham Act. The likelihood of confusion standard, as interpreted by federal case law, is the appropriate test for determining a violation under 54 Pa.C.S.A. § 1123. *See* 2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 22:3 at 27–28 (2d ed. 1984). Thus, my earlier discussion on the likelihood of confusion issue applies here as well, the upshot being that Count V of plaintiff's amended complaint must survive defendant's Rule 12(b)(6) motion to dismiss.

### IV. *Claim for Misappropriation of Property Rights*

Considerable portions of both parties' memoranda are devoted to a discussion of the legal standard governing plaintiff's claim for misappropriation of property rights [1] (Amended Complaint, Count VI). The defendant asserts that "the courts refuse to prevent the appropriation of trademarks in the absence of a showing of confusion ... There can be no such thing as 'misappropriation' of another's trademark irrespective of likelihood of confusion." (Defendant's Memorandum at 21). Plaintiff, in response, contends that "misappro-

1. Plaintiff's claim for misappropriation of right of the publicity (Amended Complaint, Count VII) will be considered in Part V of the opinion.

priation is a viable and independent cause of action under trademark law, and exists notwithstanding the more immediate consequence of confusion of goods or business." (Defendant's Brief in Opposition to Plaintiff's Motion to Dismiss at 16). In short, then, the parties harbor totally divergent views as to the legal standard governing plaintiff's misappropriation of property rights claim.

■ Since I have already concluded that plaintiff has adequately alleged likelihood of confusion (see Parts II and III), I need not resolve the aforementioned controversy for purposes of this motion. Considerations of judicial economy and fairness, however, prompt me to offer an assessment of the correct standard to be applied to plaintiff's misappropriation of property rights claim. Accordingly, I conclude that the misappropriation standard advanced by the defendant is the proper one to be applied in a trademark case. As stated by one leading trademark commentator:

> The misappropriation doctrine is a state law, judge-made offshoot of the general law of unfair competition. It is usually invoked by a plaintiff who has what he considers a valuable commercial 'thing' which he sees another has appropriated at little cost. The problem is that plaintiff's item or thing ... is not protected either (1) by federal patent or copyright legislation or (2) by ... trademark infringement.... The misappropriation doctrine cannot be used in ordinary trademark infringement as a shortcut around the trademark laws' standards of protection.... One cannot dispense with the carefully constructed requirements for trademark protection by blithely claiming that defendant misappropriated some symbol of plaintiff.... The courts have recognized that if plaintiff has failed under classic trademark ownership and infringement, then plaintiff cannot claim that defendant has 'misappropriated' the labor in creating the 'trademark'. 1. J.T. McCarthy, *Trademarks and Unfair Competition* § 10:23 at 391, § 10:34 at 429–430 (2d ed. 1984).

Moreover the Third Circuit Court of Appeals recently described the doctrine of misappropriation as applying "to a variety of situations in which the courts have sensed that one party was dealing 'unfairly' with another, but which were not covered by the three established statutory systems protecting intellectual property: copyright, patent, and trademark deception as to origin." *United States Golf Ass'n v. St. Andrews Systems*, 749 F.2d 1028, 1034–1035 (3d Cir.1984).

■ Based on the foregoing quotations, it might be argued that the misappropriation doctrine has absolutely no place in a case bottomed on trademark infringement. My own reading of the doctrine, however, convinces me that the better view is to allow plaintiff to proceed with its misappropriation of property rights claim, conditioned on a showing of likelihood of confusion. I am skeptical, though, of the added benefit a successful misappropriation of property rights claim will yield over and above the remedy afforded by a successful trademark infringement and/or unfair competition claim.

■ From a review of plaintiff's memoranda and the cases cited therein, it appears that the Eagle's Eye has equated misappropriation with the doctrine of dilution, the latter not having been specifically plead, thus blurring the distinct features of these two theories. While both misappropriation and dilution are state law offshoots of the general law of unfair competition, the dilution doctrine grants protection to trademarks beyond that provided by the classic likelihood of confusion test. The rationale behind the dilution doctrine is that:

> the gradual diminution or whittling away of the value of a trademark, resulting from use by another, constitutes an invasion of the senior user's property right and good will in his mark and gives rise to an independent wrong. The wrong is dependent neither upon a showing of competitive relationship, nor that the goods are related, nor of a likelihood of confusion.

2 J.T. McCarthy, *Trademarks and Unfair Competition*, § 24:13 at 213 (2d ed. 1984).

Dilution is a creature of state statute. In Pennsylvania, the dilution doctrine is codified at 54 Pa.C.S.A. § 1124; this statute tracks the language of the Model State Trademark Bill, § 12 and reads:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

In sum, then, defendant's motion to dismiss plaintiff's misappropriation of property rights claim will be denied. Plaintiff has now been apprised of the proper legal standard governing this particular misappropriation claim, and of the important difference between dilution and misappropriation. I must emphasize that I express no opinion as to whether plaintiff has alleged facts to support a cause of action under Pennsylvania's dilution statute. Moreover, the foregoing summary discussion is by no means an exhaustive review of the parameters of the dilution doctrine.

### V. Claim for Misappropriation of Right of Publicity

Plaintiff asserts a claim for misappropriation of the right of publicity in Count VII of its amended complaint. Defendant's motion to dismiss this claim pursuant to Rule 12(b)(6) will be granted for the reasons specified below.

■ This tort is derived from the appropriation branch of the right to privacy. *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1198 (S.D.N.Y.1983). The right protects against commercial loss caused by appropriation of an individual's personality for commercial exploitation. 1

J.T. McCarthy, *Trademarks and Unfair Competition* § 10:21 at 375 (2d ed. 1984). Right of publicity grants a person an exclusive right to control the commercial value of his name and likeness and to prevent others from exploiting that value without permission. *Bi-Rite Enterprises, Inc. v. Button Masters*, 555 F.Supp. 1188, 1198 (S.D.N.U.1983). The United States Supreme Court has recognized that the right of publicity is an "entirely different tort" than traditional invasion of privacy. *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). Pennsylvania has recognized the right of publicity in an action by the golfer Ben Hogan, *Hogan v. A.S. Barnes and Co.*, 114 U.S.P.Q. 314 (Philadelphia County Court of Common Pleas 1957). *See Gee v. CBS, Inc.*, 471 F.Supp. 600, 662 (E.D.Pa.1979).

■ Based on the foregoing principles, it is clear that the right of publicity inures to an *individual* who seeks to protect and control the commercial value of his name or likeness. This is to be distinguished from the facts at bar, in which a right of publicity is alleged to inhere in a *corporate trademark*. Although two courts have recently recognized a group's right of publicity (e.g. rock music groups), plaintiff cites no cases, nor has my research revealed any, which extend the right of publicity doctrine to trademarks. *See Winterland Concessions Co. v. Sileo*, 528 F.Supp. 1201, 1213 (N.D.Ill.1982); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1199 (S.D.N.Y.1983). I am not convinced that such an extension is warranted on the facts here presented, and thus will grant defendant's motion to dismiss plaintiff's claim for misappropriation of right of publicity.[2]

### VI. State Claim for Commercial Disparagement

■ Plaintiff, in Count VIII of its amended complaint, alleges that defend-

---

**2.** McCarthy cautions that extending the right of publicity to trademarks could result in an extension of the misappropriation doctrine to trademarks, thus granting an absolute property right and circumventing the likelihood of confusion standard. *See* 2 J.T. McCarthy, *Trademark and Unfair Competition*, § 10:34 at 430 f.n. 16 (2d ed. 1984).

ant's activities and conduct constitute commercial disparagement of its goods and services. Although this issue presents a close call, I will deny defendant's motion to dismiss this claim pursuant to Rule 12(b)(6).

A disparaging statement is one which the publisher intends to be understood, or which the recipient reasonably should understand, as tending "to cast doubt upon the quality of another's land, chattels or intangible things." *Restatement (Second) of Torts*, § 629 (1977); *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 408 (E.D.Pa. 1983). As outlined by Chief Judge Luongo in *Zerpol*, the publication of a disparaging statement concerning the product of another is actionable where (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 409 (E.D.Pa.1983); *Restatement (Second) of Torts*, § 623A (1977); W. Prosser, *The Law of Torts*, 919–922 (4th ed. 1971).

With the aforementioned legal standards in mind, I now turn to the merits of defendant's motion to dismiss. Defendant raises a two-pronged attack against plaintiff's disparagement claim. First, defendant argues that The Eagle's Eye's allegations are insufficient as a matter of law because nowhere in the allegations is Eagle's Eye identified, either directly or indirectly. Similarly, defendant contends that its advertisement contains no direct or indirect reference to Eagle's Eye or its clothing. The crux of defendant's first argument, then, is that its advertisement does not identify Eagle's Eye to the degree necessary to state a claim for commercial disparagement. This "identification" argument has appeal, but I must reject it for the following reasons.

Initially, I note that plaintiff's commercial disparagement claim does not automatically fall simply because defendant's advertisement makes no mention of plaintiff or its products. Rather, the test to be applied is whether the disparaging communication may reasonably be understood as referring to the plaintiff or its branded apparel. *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 410 (E.D.Pa.1983) (and cases cited therein). I must thus apply this test in light of the well settled principle that a Rule 12(b)(6) plaintiff is afforded the safeguard of having all of its allegations taken as true and all inferences favorable to the plaintiff will be drawn. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Turning to the amended complaint and exhibits at bar, I cannot conclude as a matter of law that defendant's advertisement cannot be reasonably interpreted as concerning The Eagle's Eye or its products. Although I express no opinion as to the ultimate success of plaintiff's claim, both the timing of the advertisement and its caricature-like content might reasonably be said to refer to The Eagle's Eye. Moreover, the allegations contained in plaintiff's amended complaint satisfy the "notice" pleading requirements of F.R.Civ.P. 8.

The second prong of defendant's attack concerns the existence of actual disparagement. Specifically the defendant claims that nowhere in its advertisement is there any derogatory or unwholesome or even unfavorable comment on plaintiff's products. Again, I cannot conclude as a matter of law that the advertisement cannot reasonably be interpreted as disparaging plaintiff's warehouse sale or its branded apparel. Without rendering judgment on the merits, I note that a fact-finder could possibly conclude that the references in defendant's advertisement to "clean, pleasant surroundings," "not a warehouse," and "no seconds" disparaged plaintiff's sale and/or its products.

In sum, The Eagle's Eye has properly alleged a commercial disparagement claim under federal pleading requirements. Its claim is not so far-fetched as to be amenable to summary dismissal pursuant to F.R. Civ.P. 12(b)(6). It has not escaped my at-

tention, however, that plaintiff's commercial disparagement claim is somewhat inconsistent with its unfair competition and trademark infringement claims. As previously discussed, unfair competition and trademark infringement are predicated on a likelihood of consumer confusion. Potential customers are *confused* as to the origin of the goods they are purchasing. If successfully applied to the facts at bar, this standard would yield the conclusion that consumers purchased clothing at Ambler Fashion Shop under the false belief that they were buying Eagle's Eye apparel. This stands in stark contrast to the situation presented by plaintiff's commercial disparagement claim, which is predicated upon the advertisement reader's ability to correctly discern the identities of the two parties and realize that one is disparaging the products of the other.

## IV. *Conclusion*

Defendant's motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) is granted as to plaintiff's misappropriation of right of publicity claim (Amended Complaint, Count VII) and is denied as to all other claims (Amended Complaint, Counts I through VI; Count VIII).