Nathan **MALKIN**, Plaintiff,

v.

David **DUBINSKY**, as President of the International Ladies' Garment Workers' Union, an unincorporated association of more than seven persons, Mark Starr, Morton Wishengrad, Promotional Films, Inc., and Classic Pictures, Inc., Defendants.

United States District Court
S. D. New York.
Nov. 21, 1956.

See also 14 F.R.D. 38.

George D. Cohen, New York City, for plaintiff.

Morris P. Glushien, New York City, for defendants. Wilburn Daniels, Benjamin M. Shieber, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Plaintiff instituted an action in the Supreme Court of New York in August, 1952, alleging in two separate causes of action that the defendants, by producing and distributing a motion picture entitled "With These Hands", had infringed both his unpublished copyrighted play called "The Battle Goes On" and an uncopyrighted Yiddish version of this play. Defendants removed the action to this Court in October, 1952, and now more than four years later, with trial imminent, they have moved for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. For purposes of this motion, defendants are willing to concede that they had access to plaintiff's plays and that defendants actually copied those parts common to both works.

Defendants base their motion on the contention that whatever similarity there is between the plays and the film is either in the public domain or is inconsequential. If this were the case, there is no doubt that a trial judge would be required to direct a verdict for the defendant and under these circumstances judgment could properly be awarded on this motion.[1] However, a careful reading of both works indicates that the similarities are more than inconsequential.

In their broad outlines, both the play and the film depict the impact of the struggle for union organization and development in the United States on the lives of the leading characters and their families. In both works the chief character is a married Jewish worker. Both works deal with a strike and contain scenes set in a factory and a tenement house apartment. Apart from these broad similarities, the following specific incidents are common to the play and the film: The employer or his representative express the sentiment that they don't want a union in their factory; during the strike a rent or bill collector comes to both families, when they explain their financial difficulties the collector tells them that they should have thought of that before they went out on strike. The uncopyrighted play and the film

1. Buckler v. Paramount Pictures, D.C. S.D.N.Y.1955, 133 F.Supp. 223; Millstein v. Leland Hayward, Inc., D.C.S.D. N.Y.1950, 10 F.R.D. 198; Rose v. Connelly, D.C.S.D.N.Y.1941, 38 F.Supp. 54. In Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, the court stated, "We should not be taken as saying that a plagiarism case can never arise in which absence of similarities is so patent that a summary judgment for defendant would be correct. Thus suppose that Ravel's 'Bolero' or Shostakovitch's 'Fifth Symphony' were alleged to infringe 'When Irish Eyes Are Smiling.'" 154 F.2d at page 473.

both contain a number of other common incidents. There is a scene in both in which the boss or his foreman unjustly chastise a worker, a co-worker comes to his defense and criticizes the boss exclaiming " * * * it's a free land." The foreman in the play then turns to the co-worker and says, "That's all. You're fired." In the film, the boss turns to the co-worker and says, "That's all. You're through." Furthermore, both works have a scene in which the protagonist informs his wife that he is going to strike and in which the wife, explaining the financial plight in which this will put them, asks her husband not to strike. The sentiments expressed in this scene are virtually identical in both works.

| | |
|---|---|
| Wife in play: | "I've heard you speak about a union for years. It is just talk, no action." |
| Wife in film: | "They've been talking union for thirty years. Talk Barondess, Grossman, John Dyche, it's all talk." |
| Wife in play: | "When the landlord comes to collect the rent, I'll tell him: Harry is on a strike?" |
| Wife in film: | "When the landlord comes for the rent, I'll tell him Brody is a human being." |
| Husband in play: | "This the only alternative-to strike". |
| Husband in film: | "There's only one thing * * * Strike!" |
| Wife in play: | "You can't strike, you mustn't." |
| Wife in film: | "You can't! Do you hear me? You can't strike." |

There are a number of other scenes in the uncopyrighted play which bear some degree of likeness to scenes in the film. In both, certain historical events are alluded to, including the First World War, the Stock Market Crash of 1929, the Depression, etc. In another scene, there is the following dialogue:

| | |
|---|---|
| Boss in play: | "* * * I don't like to see people starve." |
| Boss in film: | "* * * I can't see people should starve." |
| Protagonist in play: | "We don't want alms. We want you to grant recognition to the union." |
| Protagonist in film: | "We don't want charity. We want what's right. Boss: What? Worker: Union." |

■ While the similarities would not, by themselves, compel the conclusion that the defendant copied, since we are assuming for purposes of this motion that the defendants did copy all of them from the plaintiff's play, the only question is whether a jury could reasonably find that there was unlawful appropriation.[2] Arnstein v. Porter established that once copying has been demonstrated and there is a certain minimal similarity between the works, the question of improper appropriation presents, in the first instance, an issue of fact.[3] Judge Frank in that case gave the following rationale for this conclusion:

"The plaintiff's legally protected interest is not, as such, his reputation as a musician but his interest in the potential financial returns from his compositions which derive from the lay public's approbation of his efforts. The question, there-

2. " * * * if copying is otherwise shown, proof of improper appropriation need not consist of similarities which, standing alone, would support an infer-

ence of copying." Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 469.

3. Id. 154 F.2d at pages 472–473.

fore, is whether defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such popular music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.

"Surely, then, we have an issue of fact which a jury is peculiarly fitted to determine." 154 F.2d at page 473.

The fact that Arnstein involved musical compositions and the instant action involves literary compositions clearly does not diminish the applicability of Judge Frank's rationale.

While any one similarity taken by itself seems trivial, I cannot say at this time that it would be improper for a jury to find that the over-all impact and effect indicate substantial appropriation. In the face of the similarities in the instant suit, the issue should not be determined in a summary judgment proceeding. Judge Frank recommends that even where trial is before a judge, he should summon an advisory jury on this question.[4]

The fact that both the play and the film contain numerous scenes which are in no way similar will not, by itself, prevent the jury from finding infringement. "* * * to constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it, in form or substance, but that if so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially, to an injurious extent, appropriated by another, that is sufficient to constitute an infringement." West Publishing Co. v. Edward Thompson Co., C.C.E.D.N.Y. 1909, 169 F. 833, 854.[5]

At the trial, the jury will have the opportunity to see the film involved, to hear witnesses describe the props and staging devices used in the play, and to determine any questions of credibility which may arise regarding their testimony. My ruling here is premised to some extent on certain concessions being made for the limited purpose of this motion. Of course, upon a trial the judge will be in a position to adjudicate de novo the relevant facts and law on a motion by the defendants for judgment.

For the reasons discussed above, the motion is denied. So ordered.

---

4. Id., 154 F.2d at page 473.

5. See also Universal Pictures Co. v. Harold Lloyd Corp., 9 Cir., 1947, 162 F.2d 354, 361. See generally, Nimmer, Inroads on Copyright Protection, 64 Harv. L.Rev. 1125 (1951).