**HARVEY CARTOONS, Harvey World Famous Comics, Inc., Harvey Famous Cartoons and Harvey Publications, Inc., Plaintiffs,**

v.

**COLUMBIA PICTURES INDUSTRIES, INC., Defendant.**

No. 84 CIV. 8274 (PKL).

United States District Court,
S.D. New York.

Oct. 28, 1986.

Dumler & Giroux, New York City (Egon Dumler, Seymour Reitknecht, of counsel), for plaintiffs.

Pryor, Cashman, Sherman & Flynn, New York City (Stephen F. Huff, Donald S. Zakarin, Tom J. Ferber, of counsel), for defendant.

LEISURE, District Judge:

This is a dispute over two ghosts. Plaintiffs (referred to herein collectively as "Harvey") have moved for summary judgment as to the issue of liability on their copyright infringement, trademark infringement and unfair competition claims with respect to their rights in a cartoon character named "Fatso." Defendant Columbia Pictures Industries, Inc. ("Columbia") has cross-moved for summary judgment, asking the Court to dismiss Harvey's complaint in its entirety.

Harvey is the former publisher of "Casper, The Friendly Ghost" ("Casper") comic books. Columbia is the producer of the motion picture entitled "Ghostbusters." Harvey claims that the "Ghostbusters" logo, which depicts a cartoon ghost behind the international prohibition sign, infringes its copyright and trademark rights in a cartoon character named "Fatso," who is a member of "The Ghostly Trio," a group of ghosts which occasionally appears with "Casper."

The "Ghostly Trio" is comprised of three cartoon ghosts named "Fatso," "Fusso" and "Lazo." Each ghost is represented by a simple line drawing with an exterior contour and a few internal lines representing facial features. These characters differ in appearance from "Casper" in that, *inter alia*, all three have knotted foreheads and evil or mischievous facial expressions, whereas "Casper" has a boyish cartoon face and a round head resembling that of a bald man. Harvey claims that each of these characters is protected by valid copyright.

The "Ghostbusters" ghost is also represented by a simple line drawing. As with "Fatso," the exterior contour of this ghost is billowy with a knotted forehead and jowly cheeks. These are the key visual characteristics shared by the disputed ghosts. Columbia claims that the "Ghostbusters" logo merely depicts a generic cartoon ghost behind the international sign of prohibition. Columbia further claims that the image of "Fatso" has entered the public domain and may be freely copied.

For the reasons set forth below, summary judgment is granted to Columbia and Harvey's complaint is dismissed.

## FACTUAL BACKGROUND

Harvey is a family owned business, formed in the 1940's, whose principal activity is the publication of comic books and animated cartoons. Many of the cartoon characters created by Harvey, including "Casper" and "The Ghostly Trio," have enjoyed tremendous popularity and nationwide, if not worldwide, recognition. It is undisputed that Harvey owns valid copyrights to dozens of cartoon films and publications featuring the characters "Casper" and "The Ghostly Trio."

"Casper" first appeared in a film, copyrighted by Paramount Pictures ("Paramount"), on November 16, 1945. The records of the Copyright Office of the United States ("Copyright Office") indicate that the copyright in this motion picture expired upon a failure of renewal. (Affidavit of Stephen F. Huff, Esq., July 2, 1985, Exhibit M) ("Huff Aff."). The first issue of a "Casper" comic book for which a copyright was obtained was Volume I, Issue No. 2, dated February 1950, copyrighted by Paramount.[1] (Huff Aff., Exhibit M). This earliest "Casper" comic book contains collateral ghosts who appear with "Casper" and who, unlike "Casper," have knotted foreheads. (Huff Aff., Exhibit B). As with

---

1. Plaintiff obtained the rights inuring from these and subsequent copyrights of the "Casper" comics by virtue of at least two contracts, made in 1958 and 1963, between plaintiff and Paramount. These contracts reserved to plaintiff the right to distribute animated cartoons of the "Casper" characters. Plaintiff contends that this contractual relationship actually dates back to 1952, but concedes that it cannot locate the 1952 contract.

the film referred to above, the copyright in this comic book also lapsed upon failure of renewal.

A number of incidental ghosts appeared in the "Casper" stories throughout the early years of publication. "Casper" comic books from 1952, 1953 and 1954, which no longer have valid copyrights, depict incidental ghosts with top-knotted artwork. (Huff Aff., Exhibit C) By the end of 1954, three ghosts usually appeared with "Casper." In the October, 1954, issue of "Casper" comics, the chubbiest of these three ghosts is, at one point, called "Fatso." (Huff Aff., Exhibit D). By the very next issue, November, 1954, this fattest of the ghosts had developed facial features and expressions which are nearly identical to those of the ghost "Fatso" in plaintiff's later issues. (Huff Aff., Exhibit E). In 1955, Harvey designated a name for the threesome which often appeared with "Casper." Thenceforth they were called "The Ghostly Trio".

By January of 1984, all copyright registrations for issues of "Casper" comics predating 1956 had expired. At his deposition, Steven Harvey, plaintiff's president, conceded that none of the copyrights in the "Casper" comics from the early 1950's had been renewed. (Transcript of Plaintiff's Deposition, May 1, 1985 (pp. 1–145), continued on May 22, 1985 (pp. 146–241), at 200–01) ("P. Dep."). Moreover, Mr. Harvey conceded that failure to renew the copyrights was based on a willful and deliberate decision of Harvey.

Pictorial representations of "Casper" and "The Ghostly Trio" remained largely unchanged from the mid 1950's until plaintiff ceased publishing altogether.[2] It is undisputed that the depiction of these characters, as they exist in plaintiff's later issues, are derived largely from the graphics used in the older works. (P.Dep. at 89, 92, 115). The "Fatso" character in plaintiff's later

issues contains refinements and embellishments, but is otherwise nearly identical to its predecessor character, which appeared in 1954 and 1955 issues, except that the storylines have changed.

On September 3, 1963, plaintiff registered a logo for "The Ghostly Trio" as a trademark in the United States Patent Office.[3] (P. Notice, Exhibit D). This logo depicts three juxtaposed heads of evil or mischievous looking cartoon ghosts emblazoned with the words "The Ghostly Trio" in stylized lettering. On September 3, 1983, this trademark was renewed for an additional twenty years. If not for the presence of their group name on the logo, it is uncertain whether each head viewed separately could be readily identified with the character it is intended to represent. The fattest of the three faces has a cleft chin, bulbous nose, mischievous grin, slanted eyebrows, piercing eyes and its top-knotted forehead droops forward. Of the other two faces, it is difficult to ascertain which one is intended to represent "Fusso" and which is "Lazo."

In recent years, the logo for "The Ghostly Trio" has been merchandised in a wide variety of children's products including lunchboxes, stickers, bedsheets, pocketbooks and coloring books. In view of its marketability, there is no doubt that the logo is readily identified by much of the general public, children and adults alike, as "The Ghostly Trio" from "Casper" comics.

Columbia released its motion picture entitled "Ghostbusters" in the summer of 1984. "Ghostbusters" is a comedy about professors of parapsychology who hire themselves out to people seeking to be rid of various mischievous ghosts who are haunting their establishments. The film has enjoyed, and continues to enjoy, tremendous financial success. Prior to and in connection with the film's release, Columbia en-

---

**2.** Plaintiff is still syndicating on television the cartoons which were made for theatrical exhibition in the 1950's and 1960's which contain the cartoon characters "Casper" and "The Ghostly Trio."

**3.** On September 3, 1963, plaintiff also registered a logo for "Casper's Ghostland and all his friends" as a trademark in the United States Patent Office. (Plaintiff's Notice of Motion for Summary Judgment, Exhibit D) ("P. Notice"). This logo does not contain pictorial representations of any cartoon characters.

gaged in a lavish nationwide marketing campaign in which advertisements with a "Ghostbusters" logo were widely published. The logo which appeared in the advertisements also appears in the film itself. It is seen both on the uniforms of the film's protagonists and on the truck which they drive. The logo always appears as a still-life representation and has no role in the film other than to be a cartoon character and merchandising symbol.

Columbia's extensive marketing campaign began months before the release of "Ghostbusters." The logo currently in dispute was the central focus of the campaign. Advertisements frequently displayed the logo with nothing more than a short caption.

The "Ghostbusters" logo gained great popularity with the commercial success of the "Ghostbusters" film and its theme song. Tremendous consumer demand developed for merchandise bearing the logo, such as t-shirts and novelty items. The Coca Cola Company, Columbia's parent company, has, on occasion, used the logo to advertise its soft drink, and Columbia claims that various unauthorized merchants have distributed counterfeit merchandise bearing the logo.[4] Because the general public closely identifies the logo with the "Ghostbusters" film and theme song, it seems clear that it is the goodwill created by the film and theme song, rather than any possibility of confusion with the "Casper" characters, that has caused the logo to garner such widespread marketability.

## LEGAL DISCUSSION

Summary judgment shall be granted only if "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]he burden [is] on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citation omitted). It is incumbent upon the Court in deciding whether there is any genuine factual issue to resolve all ambiguities and draw all reasonable inferences against the moving party.[5] *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 115 (2d Cir.1984) (citations omitted); *Equal Employment Opportunity Comm'n v. Home Insurance Co.*, 672 F.2d 252, 257 (2d Cir.1982).

In a copyright infringement action the plaintiff must first prove ownership of copyright and then copying by the defendant. *Warner Brothers, Inc. v. American Broadcasting Co.*, 654 F.2d 204, 207 (2d Cir.1981) ("*Warner I*"). As a threshold matter, a copyright plaintiff must establish the existence and validity of its copyright, since in the absence of copyright even original creations are in the public domain and may be freely copied. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).

Copying can rarely be proven directly. Rather, "[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986). *Accord Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). "The formula most favored by courts, and often expressed in our circuit, is that substantial similarity should be judged by the spontaneous response of the ordinary lay observer." *Walker, supra*, 784 F.2d at 51 (citations omitted). It is uncontested that Co-

---

**4.** This claim is not before the Court in the present action.

**5.** The Second Circuit Judicial Conference recently addressed the issue of pretrial disposition of cases by summary judgment and concluded that:

> Steps should be taken to dispel the prevalent misconception that summary judgments are disfavored in this Circuit and to clarify the standards of appellate review of summary judgment rulings, with the aim of making accelerated dispositions more readily available in appropriate cases.

Second Circuit Committee on the Pretrial Phase of Civil Litigation, Final Report, at 3 (June 11, 1986).

lumbia had access to several, if not all Harvey publications containing "The Ghostly Trio." Consequently, the copyright issue is limited to whether Columbia's logo is substantially similar to protectible material from Harvey's copyrighted work.

The copyright laws protect original works of authorship. Protection is limited to the "expression of the idea" contained in such works. *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). A copyright registration certificate constitutes prima facie evidence of copyright validity. 17 U.S.C. § 410(c) (1982). *See Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). Columbia does not dispute that Harvey owns valid copyrights in all Harvey publications that were duly registered with the Copyright Office and whose copyrights have not expired. Likewise, Harvey concedes that it did not renew any copyrights in its "Casper" publications from the early 1950's. Notwithstanding, Harvey maintains that its characters, as they appear in these early publications, are protected by valid copyright. The Court disagrees.

■ Copyright protection arises when a work is created and gives the author certain exclusive rights for a limited period of time. The requirements for, and duration of, copyright protection vary, depending on the law in effect when a work is created. The current Copyright Act, 17 U.S.C. §§ 101–914 (1982 & Supp.1986), was enacted October 19, 1976 (the "1976 Act"), and became effective January 1, 1978, long after Harvey's early "Casper" publications were created. Consequently, the resolution of this copyright dispute is governed by the Copyright Act of 1909 (the "1909 Act"). *See Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 754 (9th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

Statutory copyright protection for published works under the 1909 Act endured for twenty-eight years, and was renewable for an additional twenty-eight years.[6] 1909 Act § 23. Expiration of the original twenty-eight year period and failure to renew the copyright caused the work to enter the public domain. *See Lottie Joplin Thomas Trust v. Crown Publishers*, 456 F.Supp. 531, 535 n. 10 (S.D.N.Y.1977) (renewal of registration necessary for copyright to be effective), *aff'd*, 592 F.2d 651 (2d Cir.1978). *See also Roy Export Co. v. Columbia Broadcasting System*, 672 F.2d 1095, 1101 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (work enters public domain if requirements of statute are not complied with). Once in the public domain, even original creations may be freely copied. *Durham, supra*, 630 F.2d at 908.

Assuming, *arguendo*, that the "Ghostbusters" logo features a direct copy of "Fatso," if copyright protection for the basic pictorial representation of "Fatso" had lapsed prior to Columbia's first publication of the "Ghostbusters" logo, then Harvey's copyright infringement claim must fail as a matter of law.

Columbia first began to publish the "Ghostbusters" logo as the lynchpin of its promotional campaign months before the film's release in the summer of 1984. Thus, at the time of Columbia's first publication of the disputed logo, all of Harvey's copyrights in the "Casper" comics predating 1956 had lapsed for failure of renewal. The Court has viewed samplings of "Casper" comic books from their inception through the year 1955, as well as of later issues. As previously stated, the pictorial representation of the character "Fatso" as he appears in 1955 is nearly identical to "Fatso" as he appears in Harvey's later publications, which are still protected by valid copyright.

■ The protection afforded by copyright extends generally only to those elements of a work which are original. If a copyrighted work is derived, in whole or in

---

6. Section 23 of the 1909 Act provides as follows: "[T]he copyright secured by this Act shall endure for twenty-eight years from the date of first publication, ... [and] the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years...."

**1570**

part, from a prior or underlying work, the copyright on the derivative work[7] will not necessarily protect the underlying work. If, for instance, the underlying work is in the public domain, as are Harvey's early "Casper" comics which contain, by Harvey's own admission, "Fatso's" predecessor character, the copyright on the derivative work will not protect the underlying work. As stated by the Second Circuit, "a derivative copyright is a good copyright only with regard to the original embellishments and additions it has made in the underlying work." *Filmvideo Releasing Corp. v. Hastings,* 668 F.2d 91, 92 (2d Cir.1981). *Accord Russel v. Price,* 612 F.2d 1123, 1128 (9th Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980) (well-established doctrine that a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work). Professor Nimmer has succinctly stated this rule of law as follows:

> If the underlying work is in the public domain, a copyright in the derivative work will not render the underlying work protectible. Thus copyright in a derivative or collective work merely protects against copying or otherwise infringing the particular compilation or arrangement of a collective work, or the original contribution contained in the derivative work.

1 Nimmer on Copyright § 3.04 at 3–15—3–16 (1985).

**7.** Section 101 of the Copyright Act defines a "derivative work" as:
> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.

**8.** Harvey raises certain claims regarding appropriation by Columbia of the storylines in back issues of "Casper" comics. However, these allegations are not contained in Harvey's motion and it is not clear whether they are before the Court. Notwithstanding, the Court has viewed the "Ghostbusters" film and read the allegedly infringed material from the "Casper" comics.

"Fatso's" most distinctive feature, his basic top-knotted design, has not changed to any appreciable degree since 1955. From 1955 until Harvey ceased publishing, "Fatso" retained the same jowly cheeks and the same billowy contour. To the limited extent that a simple line drawing of a cartoon ghost is capable of expression, Harvey's ghost and Columbia's logo are similar in no other respect.[8] All of the artwork which Harvey seeks to protect is in the public domain. The only appreciable "original contribution" made to "Fatso" in Harvey's derivative works is new storyline.

Contrary to plaintiff's position, the fact that the latter issues of "Casper" comic books remain copyrighted does not serve to protect the contents of the issues with expired copyrights. Harvey's existing copyrights are valid only with respect to the storylines or other original contributions of the works to which they pertain. These copyrights cannot "affect or enlarge the scope [or] duration" of copyright protection for the artwork which has long since entered the public domain. 17 U.S.C. § 103.

## THE INSTANT MOTION

The power of a court to grant summary judgment dismissing copyright infringement claims is appropriate where, as here, the parties are able to put their work before the court in concrete form, thus facilitating a comparison of the works. *See Durham, supra,* 630 F.2d at 918. The court may then determine noninfringement as a matter of law, either because the

The storyline in one such back issue opens with a scene depicting ghosts in the New York public library, another contains a marshmallow monster, a third centers on the travails of a ghost-catching professor, and a fourth features another ghost-catching professor who jails captured ghosts in his special "ghost-proof" machine. These similarities to the plot, theme and characters of the "Ghostbusters" film are not substantial enough to constitute infringement. The ideas for these storylines, while possibly original to Harvey, are developed and expressed differently in Columbia's film. It is axiomatic that copyright "protection is given only to the [particular] expression of [an] idea and never to the idea itself." *Mazer v. Stein, supra,* 347 U.S. at 217, 74 S.Ct. at 470.

similarity between the two works concerns only " '*non*-copyrightable elements of the plaintiff's work,' or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Brothers, Inc. v. American Broadcasting Co.*, 720 F.2d 231, 240 (2d Cir.1983) ("*Warner II*") (citations omitted) (emphasis in the original).

■■■ The Court finds that the pictorial representation of "Fatso," as he appears in Harvey's comic books with expired copyrights, has entered the public domain. Accordingly, the alleged similarities between the "Ghostbusters" logo and "Fatso" concern only non-copyrightable elements of plaintiff's work. For this reason alone [9] Harvey has failed to establish copyright infringement and its motion for summary judgment with respect to the copyright claim is denied.[10]

## TRADEMARK CLAIM

Harvey claims that the "Ghostbusters" logo is confusingly similar to its registered trademark in "The Ghostly Trio." In support of this claim, Harvey points to the pictorial similarity of "Fatso" and the "Ghostbusters" ghost, claiming that Columbia's use of this ghost creates a likelihood of consumer confusion. Columbia does not dispute the validity of Harvey's trademark. Rather, Columbia asserts that, as a matter of law, plaintiff's trademark claim must be judged by comparing the totality of plaintiff's mark to defendant's logo; and that a mere visual comparison of the two marks reveals that they are utterly dissimilar. Columbia further asserts that moving plaintiff bears the burden of producing evidence of actual consumer confusion.

9. The Court need not decide the issue of substantial similarity between the two works. However, were the Court to decide the copyright claim solely on this basis, Harvey's complaint would nevertheless be dismissed. There are only very limited ways to draw the figure of a cartoon ghost. Simplicity of design is the element most common to the works at issue. To the extent that their pictorial representations are developed, a visual comparison reveals dissimilarity of expression.

The ability to distinguish these most simplistic of characters derives largely from the facial characteristics of the two ghosts. For example, "Fatso" has a prominent bulbous nose and a large mouth. Sometimes he appears with a mischievous or evil expression and at other times he has a large smile which exposes his tongue or teeth. In contrast to "Fatso," Columbia's ghost has very small and indistinct facial features. His nose consists of a short curved line and his facial expression is one of bewilderment.

The pictorial representation of Columbia's ghost is comprised of only five elements: a billowy top-knotted contour, eyes, nose, mouth and hands. By Harvey's own admission, there is no similarity of the latter four elements to the corresponding features of "Fatso." (P. Dep. at 23, 33, 35, 54, 79–80). Moreover, these four elements, as well as the top-knotted design, appear to be stock features of cartoon ghosts in general. The Court has viewed various comic book publications including "Homer, The Happy Ghost," "Melvyn, The Mixed-Up Ghost" and "Oaky Doaks," as well as an issue of Walt Disney's "Donald Duck" which features one of "Donald Duck's" nephews dressed in a top-knot-ted ghost costume. It is clear that the artwork for which plaintiff seeks protection is common to all of these works.

The ordinary lay observer test for judging substantial similarity, *Walker, supra*, 784 F.2d at 51, must be considered in light of the limited modes of expression that are available, as a practical matter, to those who wish to produce the image of a cartoon ghost. "Similarity of expresion ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity." 3 Nimmer on Copyright § 13.03[A] at 13–32–33 (1985). Harvey cannot credibly assert that Columbia's ghost, separated from the international prohibition sign with which it uniformly appears, is an exact copy of "Fatso." Indeed, there are several identifiable differences between the two ghosts. Although these differences are slight, they are nonetheless significant, given the limited variations of design available to Columbia. In such cases only exact copying is infringement. *See Past Pluto Productions Corp. v. Dana*, 627 F.Supp. 1435, 1444 (S.D.N.Y.1986). The Court concludes that no reasonable jury, properly instructed, could find that the two works are substantially similar. *See Warner II, supra*, 720 F.2d at 240.

10. Harvey's motion for summary judgment is deficient in that it does not include a separate statement of material facts as to which it contends that there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion pursuant to Rule 3(g) of the Local Rules of this Court.

The federal law of trademarks, 15 U.S.C. § 1051–1127 (1982 & Supp.1986) (the "Lanham Act") defines a trademark as:

any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127

Trademarks protect the public from being deceived as to the source and quality of goods, and to protect the mark's owner from infringement of his property rights. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 2:1 at 44 (2d ed. 1984).

Section 43(a) of the Lanham Act protects against false designation of origin and false description of representation, whether or not a registered trademark is involved. The starting point in an action for trademark infringement is determining "whether a mark is eligible for protection." *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 215 (2d Cir.1985). The ultimate inquiry in most such actions is whether there exists a "likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.), *cert denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1978) (citation omitted). Although this is primarily a question of fact, in claims under § 43(a) "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood

of confusion as to source." *Warner II*, 720 F.2d at 246. Such an assessment properly turns on a multi-factored balancing approach which recognizes that each trademark infringement case presents its own unique set of facts.[11] However, summary judgment is appropriate if a visual comparison reveals that the products or marks are "so dissimilar that no question of fact is presented." *Nintendo, supra,* 746 F.2d at 116.

"In order to determine if confusion [between two marks] is likely, each trademark must be compared in its entirety; juxtaposing fragments of each mark does not demonstrate whether the marks as a whole are confusingly similar." *Id.* at 117 (citations omitted). A visual comparison of "The Ghostly Trio" trademark and the "Ghostbusters" logo demonstrates that they are largely dissimilar. Harvey's trademark depicts three ghosts' heads whereas Columbia's shows both the head and torso of only one ghost. Harvey's ghosts appear with the words "The Ghostly Trio" whereas Columbia's ghost appears behind the international sign of prohibition.[12] Harvey's ghosts have mischievous or evil facial expressions whereas Columbia's ghost appears bewildered. The fact that both marks employ ghosts does not alone make the marks confusingly similar. With respect to the treatment given plaintiff's ghost and defendant's ghost, the impression conveyed could hardly be more different.

Harvey argues that Columbia has taken "Fatso," a portion of its trademark, and placed it behind an international sign of prohibition, thus hoping to escape a finding

---

**11.** Writing for the court in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), Judge Friendly noted that an assessment of likelihood of confusion as to source properly turns on the examination of many factors:

[The] strength of [the] mark, the degree of similarity between the ... marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of

the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account.

*Id.* at 495, *quoted in Thompson, supra,* 753 F.2d at 213–14.

**12.** Plaintiff claims that defendant's ghost sometimes appears without the international sign of prohibition. However, plaintiff has produced evidence of only one such occurence. (Affirmation of Steven Harvey, May 29, 1985, Exhibit T) ("Harvey Aff.").

of infringement. The Court is mindful that "the image of a cartoon character and some indicia of that character can function as a trademark to identify the source of a work of entertainment." *Warner II, supra,* 720 F.2d at 246 (citation omitted). However, there is no doubt that Columbia has not appropriated any of the indicia of "Fatso." Columbia has not taken his name, his storyline or his exact image. Moreover, the Court has chronicled both the pictorial similarities and distinguishing features of "Fatso" and Columbia's ghost. There are certain key visual similarities between the two works, namely the top-knotted design and jowly cheeks. These similarities, however, are not substantial. The marks must be compared in their entirety. *Nintendo, supra,* 746 F.2d at 117. A visual comparison reveals differences in "total concept and feel" which precludes a finding of infringement. *See Warner II, supra,* 720 F.2d at 246 (visual comparison of the "Superman" works and "Greatest American Hero" series establishes as a matter of law a lack of substantial similarity that would create a likelihood of confusion as to source). In addition to the dissimilarity of the ghosts depicted in the two works, Columbia's use of the international symbol of prohibition serves to alert the public to the distinctly separate nature of its film and merchandise derived therefrom. This, together with the presence of Columbia's name and mark on the "Ghostbusters" film assures that there could little, if any, confusion as to source.

Accordingly, the Court concludes that the claimed likelihood of confusion has no material basis in fact. The sole evidence which Harvey has produced on this issue are excerpts from magazine articles which suggest a general association between the "Ghostbusters" logo and "Casper" comics.[13] It is clear from reading these articles that there was no confusion whatsoever on the part of the authors. A finding of general association, that the "Ghostbusters"

logo is reminiscent of "Casper" characters, does not mean that the prospective movie-goer in purchasing a ticket for "Ghostbusters" thinks that he is going to see a "Casper" cartoon. Neither does it mean that he will think that "Ghostbusters" is derived from "Casper" cartoons or that it is sponsored by the same source as "Casper." *See Ideal Toy Corp. v. Kenner Products, Etc.,* 443 F.Supp. 291 (1977). Where, as here, the two properties are so different, Harvey's claim cannot stand without some indication of actual confusion or a "survey of consumer attitudes under actual market conditions." *Nintendo, supra,* 746 F.2d 117 (finding that the characters and stories of "Donkey Kong" and "King Kong" are so different that, absent evidence of actual confusion, no question of fact was presented on the likelihood of consumer confusion; summary judgment was granted to the defendant on Lanham Act claim) *quoting from Mattel v. Azrak-Hamway Int'l, Inc.,* 724 F.2d 357, 361 (2d Cir.1983).

■ Harvey's complaint also presented claims for unfair competition. Manifestly, Harvey's sole claim is the alleged use of the image of "Fatso" as part of the "Ghostbusters" logo. This claim is based on "legal or equitable rights that are equivalent to ... the exclusive rights within the general scope of copyright," and is therefore preempted by § 301(a) of the Copyright Act.

## CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment as to copyright infringement, trademark infringement and unfair competition is denied, and defendant's cross-motion for summary judgment to dismiss plaintiff's complaint is granted. Plaintiff's action is dismissed.

SO ORDERED.

---

13. Harvey cites an article authored by Pauline Kael which appeared in *The New Yorker* (issue dated June 25, 1984) (Harvey Notice at 7) (Huff Aff., Exhibit N); an article entitled "Gross Buster" which appeared in *Vanity Fair* (issue dated October 1984) (Harvey Notice at 7) (set forth in its entirety at Huff Aff., Exhibit N); and an article which appeared in *Variety* (issue dated June 27, 1984) (set forth in its entirety at Harvey Aff., Exhibit T).