**CORY VAN RIJN, INC., a corporation, Raisin People, Inc., a corporation, Plaintiffs,**

v.

**CALIFORNIA RAISIN ADVISORY BOARD, et al., Defendants.**

**No. CV–F–87–038 REC.**

United States District Court, E.D. California.

March 30, 1987.

D. Greg Durbin, Fresno, Cal.

Richard A. Hernandez, Encino, Cal.

R. Quincy White, Sidley & Austin, Chicago, Ill.

Vergil Gerard, Fresno, Cal.

Michael J. Howley, O'Connel, Wolfe, Plattsburgh, N.Y., Kathleen E. Gnekow, Asst. Atty. Gen., Sacramento, Cal.

John E. Frohnmayer, Portland, Or., James Phillips, Fresno, Cal.

## DECISION AND ORDER RE CERTAIN DEFENDANTS' MOTION TO DISMISS

COYLE, District Judge.

On March 16, 1987, the court heard the motion to dismiss filed by defendants California Raisin Advisory Board, Richard Markarian, Clyde Nef, Foote, Cone and Belding, Inc., and Ted Block, which motion seeks dismissal of the First Amended Complaint for Copyright and Trademark Infringement filed by plaintiffs Cory Van Rijn, Inc. and Raisin People, Inc. on the ground that plaintiffs have failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

Upon due consideration of the written and oral arguments of the parties and the record herein, the court issues its order granting defendants' motion for the reasons set forth herein.

### A. *Matters Outside of the Pleading.*

■ The threshold issue to be resolved is whether the court is faced with a motion to dismiss or a motion for summary judgment.

Attached to the First Amended Complaint are exhibits depicting the plaintiffs' Raisin People singly and in groups and one exhibit depicting the defendants' California Raisins dancing as a group, which depiction is a still from defendants' "Late Show" television commercial. Submitted by defendants as exhibits to the motion to dismiss are video cassettes containing the "Late Show" and "Lunch Box" or "Out to Lunch" television commercials featuring the California Raisins.

While there is authority that disposition of a copyright and trademark infringement case through a motion to dismiss for failure to state a claim is appropriate when the court has the opportunity of comparing the two works in question, the two works in question in those cases either were attached as exhibits to the complaint or were made part of the complaint by way of a motion for more definite statement. *Lake v. Columbia Broadcasting System,* 140 F.Supp. 707, 708 (S.D.Cal.1956); *Christianson v. West Publishing Co.,* 53 F.Supp. 454 (N.D.Cal.1944), *aff'd,* 149 F.2d 202 (9th Cir. 1945); *Lewis v. Kroger Co.,* 109 F.Supp. 484, 486 (S.D.W.Va.1952); *Lowenfels v. Nathan,* 2 F.Supp. 73, 74 (S.D.N.Y.1932). Here, while the First Amended Complaint alleges claims based on the two television commercials, neither are attached to and incorporated into the First Amended Complaint. And, as noted, the only exhibit depicting the California Raisins is one still from the "Late Show" commercial. Moreover, in opposing the motion to dismiss, plaintiffs have submitted as exhibits video cassettes of news broadcasts, various news articles, and storyboards for a proposed video television commercial.

The submission of these exhibits brings into issue the following provision in Rule 12(b):

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"Most courts ... view 'matters outside the pleading' as including any written or oral evidence in support or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." Wright and Miller, 5 Federal Practice and Procedure, § 1366, pp. 681–682 (1969).

There is no question that the exhibits submitted by plaintiffs come within this definition. And it is more than arguable that the video cassettes submitted by defendants also constitute "matters outside the pleadings." The court's research has located two decisions which involve situations similar to that before the court. In *Grove v. Mead School District No. 354,* 753 F.2d 1528, 1531, 1533 (9th Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed. 2d 70 (1985), the Ninth Circuit concurred that the district court's reading of and reliance on *The Learning Tree* as well as affidavits submitted by plaintiffs converted defendants' motion to dismiss plaintiffs' claim that use of *The Learning Tree* violated the religious clauses of the First Amendment. In *Nagoya Associates, Inc. v. Esquire, Inc.,* 191 F.Supp. 379, 381 (S.D.N.Y. 1961), the plaintiff had annexed as an exhibit to the complaint a copy of the disparaging advertisement which appeared in designated issues of defendants' magazines. At oral argument on defendants' motions to dismiss for failure to state a claim, two of the defendants presented to the district court the issues of their magazines which contained the allegedly disparaging advertisements. The district court considered the magazines to be "matters outside of the pleadings" and converted these defendants' motions to ones for summary judgment. *See also Amfac Mortgage Corporation v. Arizona Mall of Tempe,* 583 F.2d 426, 430 (9th Cir.1978), wherein the Ninth Circuit distinguished *Great Western Bank & Trust v. Kotz,* 532 F.2d 1252 (9th Cir.1976):

> In *Great Western,* the district court considered evidentiary matter beyond the plaintiff's complaint. Unless this evidentiary matter was incorporated in the plaintiff's complaint, it could not usually be considered by the court on a motion to dismiss for failure to state a claim.

The court is persuaded that it should exercise its discretion and exclude defendants' video cassettes and plaintiffs' exhibits, thereby retaining the motion's status as one for dismissal for failure to state a claim. Defendants' assertion that conversion of the motion to summary judgment should be limited solely to the exhibits presented to the court is inappropriate, especially given the expedited scheduling of this motion. In any event, in the court's opinion, conversion of the motion is not likely to facilitate disposition of the action because the extraneous material is scanty, incomplete and inconclusive. *See* Wright and Miller, *supra* at p. 679.[1]

### B. *Motion to Dismiss.*

1. Federal Copyright Infringement.

■ The court is aware that very seldom are the issues presented by this motion disposed of pursuant to Rule 12(b)(6). From its research, virtually all of the cases are rulings on motions for summary judgment. In 3 *Nimmer on Copyright,* § 12.10 (rev. ed. 1985), it is explained:

> [T]he court may compare the two works and render a judgment for the defendant that as a matter of law a trier of fact would not be permitted to find substantial similarity. In making such a comparison the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings. It has further been held that even if similarity does exist, the court may determine as a matter of law as to whether the similarity is as to copyrightable matter.... However, the practice of finding for the defendant has been frowned upon, perhaps most particularly in motions to dismiss ... where the issue of copying should be presumed against the defendant. Upon such motions by a defendant the courts must guard against a tendency to assume that the nature of the similarity between the two works indicates that in fact copying did not occur. Such motions should be granted only if the court finds that assuming copying, any

---

1. At oral argument, the parties introduced for the court's convenience large scale enlargements of Exhibits 9 and 18 to the First Amended Complaint. These enlargements were relied upon by the court in ruling on the motion to dismiss. The court does not consider these enlargements to be matters outside the pleadings since they are merely large scale duplicates.

similarity between the two works is insubstantial.

Even with this stringent standard, however, the court is convinced from its comparison of the works at issue pursuant to the principles mandated by the Ninth Circuit that plaintiffs have failed to state a claim upon which relief can be granted.

According to defendants' brief, the only issue presented by defendants in this motion to dismiss is "whether the Raisin Board's Claymatic Raisin characters are so different from any copyrightable elements of Plaintiffs' Raisin People characters that as a matter of law 'substantial similarity' cannot be established." [2] It is apparent, however, that defendants also contend as a preliminary matter that there has been no infringement because the "similarity between the two works concerns only 'non-copyrightable elements of the plaintiff's work.'" citing *Harvey Cartoons v. Columbia Pictures Industries, Inc.*, 645 F.Supp. 1564, 1570–1571 (S.D.N.Y.1986).

a. *Non–Copyrightable Elements.*

Defendants contend that a humanized raisin figure is nothing more than a common idea, incapable of copyright protection. In so arguing, defendants refer the court to Judge Learned Hand's "abstraction test" as set forth in *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir.1977):

> … It is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself.… This principle attempts to reconcile two competing social interests: rewarding an individual's creativity and effort while at the same time permitting the nation to enjoy the benefits and progress from the use of the same subject matter.
>
> The real task in a copyright infringement action, then, is to determine whether there has been copying of the expression of an idea rather than just the idea itself. '[N]o one infringes, unless he descends so far into what is concrete [in a work]

as to invade … [its] expression.' … Only this expression may be protected and only it may be .infringed.

The difficulty comes in attempting to distill the unprotected idea from the protected expression. No court or commentator in making this search has been able to improve upon Judge Learned Hand's famous 'abstractions test' articulated in *Nichols v. Universal Pictures Corporation*, 45 F.2d 119 (2 Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931):

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the play is about, and at times might consist of only its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas" to which, apart from their expression, his property is never extended. 45 F.2d at 121.

Defendants assert that "[u]nder Judge Hand's test, there is no more general an abstraction, when viewing Plaintiffs' works than to describe them as raisins incorporating anthropomorphic features, that is, figures of humanized raisins [and that] Plaintiffs, as a matter of law, cannot claim copyright protection in the idea of a humanized raisin, any more than one artist can claim copyright protection in the idea of 'statues of nudes.'"

This argument is directed to what defendants feel is a claim by plaintiffs in paragraph 25 of the First Amended Complaint to copyright protection against all uses of humanized raisins. Plaintiffs' opposition to the motion puts paid to defendants' concern:

> Defendants argue that Plaintiffs cannot be the only artist that can humanize raisins. Such a concept was never suggested. Defendants [sic] fault is not in hu-

---

**2.** It is conceded solely for purposes of this motion that plaintiffs own copyrights in the Raisin People and that defendants have had access to plaintiffs' copyrighted works.

manizing raisins but in making their characters look like Plaintiffs [sic]. In short, in duplicating Plaintiffs' expression of that idea..

Defendants further argue that plaintiffs are prevented from claiming copyright protection against defendants' use of features which are necessarily common to all humanized raisin characters. In so arguing, defendants refer to *Krofft, supra* at 1167, and contend: "Commonly referred to as the unity of idea and expression, the principle of copyright protection requires the court to consider the features embodied in all forms of a general idea. These common features are then considered part of the unprotectible general idea."

In *Krofft, supra* at 1168–1169, the Ninth Circuit explained:

The idea and the expression will coincide when the expression provides nothing new or additional over the idea. Thus, the expression of a jeweled bee pin contains nothing new over the idea of a jeweled bee pin. Returning to our own example, the idea of a plaster statute [sic] of a nude will probably coincide with the expression of that idea when an inexpensive manufacturing process is used. There will be no separately distinguishable features in the statute's [sic] expression over the idea of a plaster nude statute [sic].

The complexity and artistry of the expression of an idea will separate it from even the most banal idea. Michaelangelo's David is, as an idea, no more than a statute [sic] of a nude male. But no one would question the proposition that if a copyrighted work it would deserve protection even against the poorest of imitations. This is because so much more was added in the expression over the idea. When idea and expression coincide, there will be protection against nothing other than identical copying of the work.... Therefore, the scope of copyright protection increases with the extent expression differs from the idea.

. . . . .

No standard more demanding than that of substantial similarity should be im-

posed here. This is not a case where the idea is indistinguishable as a matter of law from the expression of that idea.... The expression inherent in the H.R. Pufnstuf series differs markedly from its relatively simple idea. The characters each have developed personalities and particular ways of interacting with one another and their environment. The physical setting also has several unique features.

Lest we fall prey to defendants' invitation to dissect the works, however, we should remember that it is the *combination* of many different elements which may command copyright protection because of its particular subjective quality.... As the court said in *Malkin v. Dubinsky*, 146 F.Supp. 111, 114 (S.D.N. Y.1956): 'While any one similarity taken by itself seems trivial, I cannot say at this time that it would be improper for a jury to find that the over-all impact and effect indicate substantial appropriation. The same is true here.

In their reply brief, defendants further assert that "[s]ubstantial similarity can only be analyzed by comparing the works after unprotectible features are separated out."

The court is not persuaded that defendants' assertion is a correct statement of the law. Certainly, the decisions cited in these portions of defendants' briefs are not supportive. *Krofft* has already been quoted. Defendants also refer the court to *Harvey Cartoons v. Columbia Pictures Industries, Inc., supra* at 1571 n. 9, wherein the district court stated in dicta:

The ordinary lay observer test for judging substantial similarity ... must be considered in light of the limited modes of expression that are available, as a practical matter, to those who wish to produce the image of a cartoon ghost. 'Similarity of expression ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.' 3 Nimmer on Copyright § 13.03[A] at 13–32–33 (1985). Harvey cannot credibly assert that Columbia's ghost, separated

from the international prohibition sign with which it uniformly appears, is an exact copy of 'Fatso.' Indeed, there are several identifiable differences between the two ghosts. Although these differences are slight, they are nonetheless significant, given the limited variations of design available to Columbia. In such cases only exact copying is infringement.... The Court concludes that no reasonable jury, properly instructed, could find that the two works are substantially similar....

Defendants also refer the court without comment or page citation to *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485 (9th Cir.1985). The court assumes defendants mean to direct the court's attention to p. 491, wherein the Ninth Circuit commented:

Cooling Systems relies heavily on *Landsberg*'s refusal to decide the issue of 'whether a work that rephrased in the same order as the original a substantial part of the ideas in another work might be held to infringe that work as a compilation ... even though none of the rephrasings of the individual ideas would constitute infringement when viewed in isolation.' *Landsberg [v. Scrabble Crossword Game Players, Inc.]*, 736 F.2d [485] at 489 [ (9th Cir.1984) ]. It claims that the alleged infringement falls precisely within the grey area that *Landsberg* refused to decide.... This contention must fail. *Landsberg*'s principle—that the fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity—must govern. Here the range of possible expressions is extremely narrow; it embraces only variations on a catalog arrangement. *See also Krofft*, 562 F.2d at 1168 ('the scope of copyright expression increases with the extent expression differs from the idea'); *cf. Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971) (discussing the 'unity of idea and expression' end of the idea-expression continuum).

These cases stand only for the proposition that the closer the idea and the expression are, the more exact the copy must be before infringement may be found. The court does not read them as allowing the dissection implied by defendants' argument and, in fact, *Krofft* specifically refused to permit this dissection in connection with the unity of expression and idea. *See also Frybarger v. IBM*, 812 F.2d 525 (9th Cir. 1987), the Ninth Circuit affirmed the district court's grant of summary judgment, holding:

Although there are numerous similar features in Frybarger's and Gebelli's works, we believe that each of the similar features constitutes a basic idea of the videogames and, to the extent each feature is expressive, that the expression is ' "as a practical matter indispensable, or at least standard, in the treatment of a given [idea]." ' ... These ideas, like all ideas, are not protected by copyright.... They have been left explicitly unprotected in order to encourage their individual expression in original works of authorship.

Furthermore, the mere *indispensable* expression of those ideas, based on the technical requirements of the videogame medium, may be protected only against virtually identical copying.

### b. *Substantial Similarity.*

■ In order to determine whether there is substantial similarity, there must be substantial similarity not only of the general ideas but of the expressions of those ideas as well. As explained in *Krofft, supra* at 1164:

The determination of whether there is substantial similarity in ideas may often be a simple one. Returning to the example of the nude statue, the idea there embodied is a simple one—a plaster recreation of a nude human figure. A statue of a horse or a painting of a nude would not embody this idea and therefore could not infringe. The test for similarity of ideas is still a factual one, to be decided by the trier of fact....

We shall call this the 'extrinsic test.' It is extrinsic because it depends not on the

responses of the trier of fact, but on specific criteria which can be listed and analyzed. Such criteria include the type of artwork involved, the materials used, the subject matter, and the setting for the subject. Since it is an extrinsic test, analytic dissection and expert testimony are appropriate. Moreover, this question may often be decided as a matter of law. The determination of when there is substantial similarity between the forms of expression is necessarily more subtle and complex. As Judge Hand candidly observed, 'Obviously, no principle can be stated as to when an imitator has gone beyond copying the "idea," and has borrowed its "expression." Decisions must therefore inevitably be ad hoc.' ... If there is substantial similarity in ideas, then the trier of fact must decide whether there is substantial similarity in the expressions of the ideas so as to constitute infringement.

The test to be applied in determining whether there is substantial similarity in expressions shall be labeled an intrinsic one—depending on the response of the ordinary reasonable person. It is intrinsic because it does not depend on the type of external criteria and analysis which marks the extrinsic test. As this court stated in *Twentieth Century–Fox Film Corp. v. Stonesifer*, 140 F.2d 579, 582 (9 Cir.1944):

> 'The two works involved in this appeal should be considered and tested, not hypercritically or with meticulous scrutiny, but by the observations and impressions of the average reasonable reader and spectator.'

Because this is an intrinsic test, analytic dissection and expert testimony are not appropriate.

### c. *Extrinsic Test.*

■ Because "[s]imilarity of ideas may be shown by an extrinsic test which focuses on alleged similarities in the objective details of the works," *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984), defendants conversely argue that "[o]bjectively analyzed under an extrinsic test, the parties' respective works are completely different." Defendants' brief sets forth the following chart detailing the dissimilarities of the general ideas:[3]

| | DEFENDANTS' CLAYMATIC RAISINS | PLAINTIFFS' RAISIN PEOPLE |
|---|---|---|
| Head/Torso | evenly proportioned, lean and slick appearance | plump, pear-like figure, with exaggerated belly size |
| Eyes | very detailed eyes with eyebrows and upper and lower eyelids | generally exaggerated, wide cartoon-like eyes; "Out to Lunch" character has eyebrows; "Casie" character has eyelashes; "Cal–Kidd" character has no eyes; "Plumpy" character has exaggerated fuzzy eyebrows |
| Mouths | detailed human-like upper and lower lips; ... | generally a gash for a mouth with no lips; "Cal–Kidd" and "Sunny" characters have no mouths; "Cassie" character has exaggerated lipstick-covered lips; ... |
| Arms | long and wire-like | short and pudgy, human flesh-like |

**3.** The court has deleted from the chart quoted herein defendants' comparison of the "Lunch Box" commercial with the Raisin People as well as those descriptive characteristics apparent only with movement.

| | DEFENDANTS' CLAYMATIC RAISINS | PLAINTIFFS' RAISIN PEOPLE |
|---|---|---|
| Hands | four-fingered, white-gloved | over-sized, three-fingered human flesh-like; no gloves |
| Legs | long and wire-like | no legs |
| Feet | shoes are uniformly high-top basketball sneakers ("Late Night") ... | shoes vary, none are high-top sneakers ... |
| Noses | detailed human-like noses with nostrils | generally no noses; "Out to Lunch" character has a bulbous clown-like nose |
| Eyebrows | expressive, brown | generally no eyebrows; except for "Plumpy" who has exaggerated orange ones |
| Facial Structure | very detailed faces, including pronounced cheekbones | generally no face, only assorted features, e.g., eyes, noses |
| Facial Expression | "cool" and bemused ("Late Night") ... | angry ("Out to Lunch"); neutral or mildly happy |
| Sunglasses ... | blue, red, and yellow | black, mirrored ("Sunny") |

Defendants further assert that the two works are dissimilar in artwork, subject matter and setting:

Plaintiff's Raisin People characters are silent, static illustrations. (Amended Complaint, ¶ 19). They generally appear as designs on raisin produce packaging. (Amended Complaint, ¶ 19). In sharp contrast, Defendants' Claymatic Raisins immediately appear three-dimensional and life-like. The clay modeling provides intricate facial expressions. Through the CLAYMATION technology, they sing, [and] dance....

In opposing this portion of the motion, plaintiffs, who appear to think that the extrinsic test is governed by a "reasonable person" standard, argue:

Defendants' attempt to show that their expression of a raisin person, when dissected part by part, is so substantially dissimilar from Plaintiffs' raisin persons that no 'ordinary reasonable person' could possible [sic] find otherwise. The test as applied by defendants is substantially meaningless. It is so particularized as to make a mockery of the extrinsic comparison test: an eye for an eye and a tooth for a tooth. Defendants' suggestion that their raisin-shaped body and head is 'evenly proportioned lean and slick' while Plaintiffs is 'plump, pear-like figure, with exaggerated belly size' is stretching emphasis to a point of disbelief. In reality, to any 'ordinary reasonable person,' both of the figures have vertically oriented raisins which form their head and body. Since raisins themselves come in thousands of different shapes, it is ridiculous to couch a comparison in such items. If defendants' wish to make a design distinction in the head and body, they should make it look like a stick with a round raisin face. Then it would certainly be 'lean and slick'.

As to eyes, defendants make their eyes about as different as the eyes of different humans and admit that the eyes of plaintiffs' characters differ from one another at least to the extent they differ from plaintiffs' people. The same is true with mouths and hands.

As to arms and legs, defendants assert long and wire-like versus short and pudgy arms, and no legs on plaintiffs' people. Plaintiffs' people may have legs in baggy pants. Certainly, they have shoes attached to something.

On balance even with an 'extrinsic' eyebrow by eyebrow comparison, we have simply this:

—both families of characters have a raisin shaped body and head

—defendants have longer wire-like legs than plaintiffs.

Extrinsically the comparor is, therefore, left to decide whether putting the plain-

tiffs' raisin people in 'tights' rather·than baggy pants so distinguishes them as to make them totally dissimilar; that is, so substantially dissimilar to the qualified reasonable person that as a matter of law, he would be unable to find them substantially similar. Under the "Arnstein test" as particularized in the *Krofft decision* (supra), they constitute the same 'idea.'

Plaintiffs' response misses the point of the extrinsic test. Moreover, plaintiffs have not pointed to any extrinsic similarities between the two works other than the raisin shaped body and head. Even these common features are totally dissimilar in appearance and texture. Beyond being told that both are raisins, it could just as easily be concluded that one is a prune and the other is a potato. The court accepts defendants' position. For all intents and purposes, there are no extrinsic similarities between the two works other than the common idea of an anthropomorphic raisin. Consequently, the court concludes as a matter of law that plaintiffs have not stated a claim for copyright infringement with regard to this element of the *Krofft* test.

### d. *Intrinsic Test.*

"To constitute infringement of expression, the total concept and feel of the works must be substantially similar." *Litchfield v. Spielberg, supra* at 1357; *Krofft, supra* at 1167. Defendants contend that application of the intrinsic test establishes as a matter of law that there is no substantial similarity of expression.

Plaintiffs' works are simply illustrated cartoon-like characters. Whatever concept and feel they impart, therefore, derives solely from their visual characteristics. Separately viewed, each character is apparently meant as a caricature of a basic personality type, with appropriate exaggerated facial features and fashion accessories. Together, the group appears, flat, fat and fumpy presenting the viewed with. a gang-like group of odd characters. At most they are reminiscent of a silent and unanimated version of the seven dwarfs in Walt Disney's *Snow White and the Seven Dwarfs*

which also were an odd collection of rotund cartoon characters with extreme personalities. (Compare Dopey, Grumpy, Sneezy, *et al.* with Plumpy, Sunny, *et al.*).

Defendants' Claymatic Raisin characters create dramatically different impressions. The immediate impression is one of a sophisticated and jazzy, professionally choreographed group of singers and dancers. Because the Claymatic Raisins sing, dance and move through life-like CLAYMATION animation, they take on full character traits. Their voices are deep and rich. Their dancing, while highly complex, is beautifully orchestrated among the characters. In sum, they are remarkably similar to the distinctive voices and motions of MoTown rhythm and blues groups. This overall perception renders them completely different characters from Plaintiffs' Raisin People characters.

Plaintiffs counter that the total concept and feel of the two works is substantially similar because the response of the ordinary reasonable person would perceive the two groups as at least cousins in an extended raisin family:

Here, we are presented with two families of humanized raisins. That is, cartoonlike characters humanized by designing a human-like character from the body of an upstanding raisin. Different characteristics are added to different family members to attribute to their personality and gender differences, yet they have sufficient similarities to be recognized as part of the same family.

The defendants' family of characters are so close to the plaintiffs' family of characters, they appear related. The defendants' family members seem to come from the entertainment industry and are a part of the family who has trained in song and dance. Plaintiff's family members are more like a group of tourists from the mid-west who have come to Hollywood to visit; somewhat like the Beverly Hill Billies.

What is predominant is that they all appear to be part of the same *big family.*

They look like relations. They do not represent two different kinds of people. They represent one kind of people with slightly different characteristics.

The 'dancing raisin' of the defendants are merely a more 'hep' group of the family. They are not a new family, and certainly, they are not a *new people*. They are not like people from Mars. They are the same kind of people as the plaintiffs' Raisin People.

The import of plaintiffs' position, however, is to claim copyright protection for the idea of a humanized raisin. Moreover, the overall impression created by the Beverly Hillbillies is so far removed from that created by The Temptations or Marvin Gaye as to preclude any question of similarity of expression.

As set forth in the decisions cited *supra,* when there are only a limited number of ways to create the image of humanized raisins, the copying must be identical or virtually so to state a claim for copyright infringement. Here, the two works do not in any way look alike beyond the raisin bodies, and the images projected are completely different.

The court, therefore, also concludes that plaintiffs have not stated a claim with regard to this element of the *Krofft* test.

Because the court concludes as a matter of law that neither substantial similarity of ideas or of the expression of the ideas has been alleged, plaintiffs' claim that defendants deliberately based the dancing raisins on the Raisin People is of no consequence because "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." 3 *Nimmer on Copyright,* § 13.03[B] (rev. ed. 1985).

2. Trademark Infringement and Pendent Claims.

Defendants argue that dismissal of plaintiff's federal copyright infringement claim because of the absence of substantial similarity requires dismissal of plaintiff's federal trademark infringement claim and their pendent claims of trademark infringement and unfair competition as well be-

cause of the absence of the requisite likelihood of confusion as to source. Plaintiffs have not opposed this premise and conclusion. Because "the absence of substantial similarity leaves little basis for asserting a likelihood of confusion," *Warner Bros. Inc. v. American Broadcasting Companies,* 720 F.2d 231, 246 (2d Cir.1983), it is apparent that plaintiffs' failure to oppose this portion of the motion is not inadvertent. Consequently, the court also grants this portion of defendants' motion.

ACCORDINGLY, IT IS ORDERED that the Motion to Dismiss the First Amended Complaint for Copyright and Trademark Infringement filed by Defendants California Raisin Advisory Board, Richard Markarian, Clyde Nef, Foote, Cone and Belding, Inc. and Ted Block is granted.